

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Sandra Wilkinson*
*Chief, Major Crimes*
*Sandra.Wilkinson@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4921*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*



2017 NOV 22 PM 4: 06

October 12, 2017

Christopher J. Purpura
8 E. Mulberry Street
Baltimore, Maryland 21202

RE: United States v. Keyon Hawkins, TBD RDB 17-568

Dear Mr. Purpura:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 27, 2017 it will be deemed withdrawn. The terms of the agreement are as follows:

## Offenses of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a two count information charging him with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and Using and Brandishing a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c) . The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Count One: Interference with Commerce by Robbery**

a. On or about the date charged in the Information, the defendant obtained property from another without that person's consent;

b. The defendant did so by wrongful use of actual or threatened force, violence, or fear.

c. As a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

**Count Two: Use, Carry and Brandish of Firearm During Crime of Violence**

a. Used the defendant used, carried and brandished a firearm;

b. The defendant did so during and in relation to a crime of violence which may be prosecuted in federal court, that is, Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a).

**Penalties**

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: for Count One: twenty (20) years imprisonment, a fine of $250,000, three years of supervised release and for Count Two: life imprisonment, a fine of $250,000 and five years of supervised release. There is a mandatory minimum term of imprisonment as to Count Two of seven (7) years that must be imposed consecutively to any sentence under Count One. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

**Waiver of Rights**

4. Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

**Advisory Sentencing Guidelines Apply**

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

**Factual and Advisory Guidelines Stipulation**

6. This Office and the Defendant understand, agree and stipulate to Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a. Count One: The base offense level for robbery is 20. U.S.S.G. § 2B3.1.

b. Count Two: the base offense level for brandishing a firearm is the same as the statutory mandatory minimum of 7 years which must be imposed consecutively to any sentence under Count One. U.S.S.G. § 2K2.4(b).

c. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant' apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

d. Accordingly, the adjusted offense level is **17 plus the mandatory minimum term of imprisonment of 7 years.**

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, or sentencing guidelines factors will be raised or are in dispute. Both parties reserve the right to argue for any departure or for any factor that could take the sentence outside of the advisory guidelines range. The parties agree to notify the Court, the United States Probation Officer and counsel for the opposing party at least fourteen (14) days in advance of sentencing of the departure or variance argument the party intends to raise. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

**Waiver of Appeal**

8. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

**Obstruction or Other Violations of Law**

9. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

**Court not a Party**

10. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for

that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

**Entire Agreement**

11. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: ______________________
Sandra Wilkinson
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-18-17
Date

______________________
Keyon Hawkins, Defendant

I am Mr. Hawkin's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11-1-17
Date

______________________
Christopher J. Purpura

**ATTACHMENT A – Stipulated Facts**

*The United States and Defendant stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. The Defendant admits the facts herein are true. The parties further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

KEYON HAWKINS, age 23, was a resident of Baltimore, Maryland.

Hawkins committed an armed robbery in violation of 18 U.S.C. § 1951 (Hobbs Act Robbery) and used, carried and brandished a handgun during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

On October 12, 2015 at approximately 6:56 p.m., Markel Benson was murdered in the 2100 block of Clifton Avenue, Baltimore, Maryland. The only items located in Benson's clothing were deodorant, a key and gum. Benson was armed. No cellular telephone was located at the crime scene.

"Witness 1" testified in the Grand Jury that prior to Benson's murder, he/she saw Benson being robbed by an individual that "Witness 1" only knew as Keyon inside the Pak Man Chicken Restaurant located at 2300 W. North Avenue in Baltimore, Maryland (hereinafter "Pak Man"). "Witness 1" advised that Benson was standing just inside the entrance to Pak Man when Keyon approached with two other men outside Pak Man and asked him if anyone had any "weed." "Witness 1" indicated to Keyon that the person who had weed was inside the store (Benson). Keyon went inside the store and the two other men stayed outside with "Witness 1". "Witness 1" could see inside the establishment and observed Keyon holding a gun to Benson. (A second witness ("Witness 2") corroborates "Witness 1's" observation of Keyon pressing up close to Benson in Pak Man). Keyon then walked out of Pak Man and left with the two men. Keyon took Benson's phone, "weed," and money. "Weed" is marijuana, a Schedule I controlled dangerous substance and the possession and distribution of controlled substances substantially affects interstate commerce. Just prior to the robbery, "Witness 1" observed Keyon driving a black Hyundai past Pak Man. Keyon Hawkins drove a black 2015 Hyundai in October 2015.

"Witness 1" stated that after the robbery, Benson was upset and intended to get his phone and weed back from the robbery. Benson obtained a gun nearby and then proceeded on foot to the area where Benson believed they would find the men who were involved in the robbery. A CCTV street camera captured Benson, who appeared to be armed, moments before shots rang out and Benson was murdered. Benson did not fire the gun in his hand.

At the time of his murder, Benson had at least one cellular telephone, telephone number 443-850-8162. T-Mobile provided subscriber and toll information for 443-850-8162 for date range 07/13/2015 - 10/13/2015. A review of the toll records showed use of Benson's cell phone after his murder. There was an outgoing connection from Benson's cell phone 443-850-8162 to cell phone 410-805-4268 on October 12, 2015 at approximately 6:59 p.m. (As stated above, Benson was shot at approximately 6:56 p.m.) This connection had no duration. Cell phone 410-805-4268 also had an outgoing connection to Benson's phone 443-850-8162 at approximately 9:07 p.m. on October 12, 2015, a little over 2 hours after his murder. This connection lasted 23 seconds.



2017 NOV 22 PM 4:07

Sprint provided the subscriber information of cell phone 410-805-4268 as belonging to Keyon Hawkins' mother and she confirmed that Keyon Hawkins' used 410-805-4268.

In response to a federal search warrant, Sprint provided the historical cell tower activity for Hawkins' cell phone 410-805-4268 for date range 09/01/2015 – 12/31/2015. A review of the records shows that at approximately 6:50 p.m., six minutes before the murder, the user of cell phone 410-805-4268 (Hawkins) made two outgoing calls. Both calls used a cell tower that could be used if one was in the area of the 2100 block of Clifton Avenue. After these two calls were made, the user of cell phone 410-805-4268 appeared to shut the phone off. A review of the records reflect that cell phone 410-805-4268 was using multiple towers that could be used if one was in and around the general area of Pak Man between 5:28 p.m. and approximately 6:50 p.m. hours when the cell phone appears to shut off.

"Witness 1" identified a photograph of Keyon Hawkins in the grand jury as the man who robbed Benson at gunpoint inside the Pak Man on October 12, 2015.

In September 2016, federal agents executed a warrant at Hawkins' residence where he lived with his mother. The mother returned to the apartment and stayed during the execution of the search warrant. Agents provided the mother with a copy of the warrant and attachment. While reading the attachment, the mother asked agents if this warrant had to do with the boy that was killed on Clifton Avenue. This is an accurate description of Benson's murder. The mother then advised that she was there in the area of Clifton Avenue right after the "body dropped" and stated Hawkins was in the area where Benson was killed when the police arrived. Hawkins' car was parked on Ridgehill Avenue between Pulaski Street and Smallwood Street, which was about a block from the murder and only blocks from the robbery. Police questioned Hawkins and allowed him to leave in the car with his mother. Hawkins did not disclose his involvement in the robbery or the use of his phone to the police.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

11-18-17
Date

Keyon Hawkins

I am Mr. Hawkin's attorney. I have carefully reviewed the statement of facts with him.

11/1/17
Date

Christopher J. Purpura